James H. Werntz, Charles W. Bush, H. Stewart Cline and Pusey Passmore, comprising the Board of School Trustees of Alfred I. Du Pont School District #7,
Plaintiffs,

*vs.*

Andrew B. Jennings,
Defendant.

*Supreme Court, On Appeal, January 7, 1954.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ., sitting.

*H. Albert Young,* Atty. Gen., *Clarence W. Taylor,* Deputy Atty. Gen., and *William Poole,* Wilmington, for plaintiffs.

*Morris Cohen,* Wilmington, for defendant.

SOUTHERLAND, Chief Justice, delivering opinion of the court:

The Court of Chancery of New Castle County has certified to us for answer a question touching the construction of a certain section of the school law found in Title 14 of the 1953 Code.

The precise question is whether the qualifications of voters at elections to authorize the issuance of bonds by school districts are set forth in the school laws with sufficient certainty.

The facts are these:

By the Act of July 10, 1953, 49 *Del.L. c.* 337, 14 *Del.C.* § 2304 *note,* the General Assembly gave approval to a comprehensive plan for the construction of school buildings throughout the State. Some forty-odd school districts are included in the plan. The greater part of the money required is to be furnished by the State; but certain districts must bear a part of the cost. The amount to be contributed by each such district is specified in the Act. To enable such districts to finance the desired construction, § 15 of the Act provides as follows:

"Any school district which is entitled under the provisions of this Act to an apportionment of a state share and which is required to provide a local share, is hereby authorized to issue its bonds for the purpose of raising money to pay its local share and raising such additional amount, if any, as such school district may desire to expend for school construction. If such bonds are issued, they shall be issued by the Board of Trustees or Board of Education of the school district pursuant to the provisions of Chapter 21 of Title 14 of the Delaware Code of 1953 * * *".

The Alfred I. Du Pont School District No. 7 is one of the districts required to bear a share of the cost of school construction in that district. The board of trustees of that district has taken the necessary steps to authorize the issuance of bonds for school construction purposes. Pursuant to 14 *Del.C.* § 2120, the board on October 10, 1953, held an election in the nature of a referendum in order to authorize the proposed bond issue. *Section* 2120 provides as follows:

"Before any bonds shall be authorized and issued under the provisions of this chapter a special election shall be held in the usual places and in the same manner as other school elections of which notice shall be given by advertisements setting out the purpose of the election published in at least two newspapers in the county at least once a week for at least two weeks before the day of the election, the last publications thereof to be at least five days before the election, and by notice posted on the door of the voting place where such election is to be held. In all of such advertisements and notices the amount of bonds proposed to be issued and the purposes and reasons therefor shall be set forth plainly and in detail. At the election, at each voting place there shall be provided a sufficient number of ballots on which shall be written or printed the words 'for the bond issue,' and an equal number of ballots on which shall be written or printed the words 'against the bond issue,' and each voter shall be entitled to receive both of said ballots, one of which the voter may deposit as his ballot, but any voter may prepare his own ballot and deposit

that in lieu of the ballot provided. The polls for the election shall open at one o'clock P. M. of the day advertised for holding the election and remain open until eight o'clock P. M. The election shall be held by such persons as shall be designated by the School Board of the District concerned, and if the persons so designated are not present at the time for opening the polls, the voters present may name election officers consisting of an inspector, two judges and two tellers to hold the election."

It is to be observed that the quoted section does not in terms specify the qualifications of the voters of the district. It requires the election to be held "in the same manner as other school elections". The qualifications of voters in school districts in which school trustees are elected are prescribed in 14 *Del.C.* § 314, which provides as follows:

"Every citizen who resides in the District in which the school election is being held and who would be entitled at the time of the holding of the school election to register and vote in any election district, of which the School District or Special School District is a part, at a general election, if such general election were held on the day of such school election, may vote at the school election in the District in which he resides, whether or not he is at the time a registered voter."

At the referendum held on October 10, 1953, voters with the qualifications specified in § 314 were permitted to vote. The result was a large majority in favor of the proposed issue. Thereafter objection to the validity of the referendum was made by a resident and taxpayer of the school district. It was asserted that § 2120 does not specify the qualifications of voters at the election, and notice was given that, if necessary, an injunction would be sought to prevent the issuance of the bonds. Thereupon the trustees filed in the court below against the taxpayer a complaint seeking a declaratory judgment that the bonds had been lawfully authorized. The Chancellor, pursuant to *Article* IV, § 11(9) of the *Constitution, Del.C.Ann.,* has certified to us for answer the following question:

"Are the qualifications of voters as set forth in 14 *Del.C.* § 314 incorporated by reference or implication in 14 *Del.C.* § 2120?".

The answer to the question thus propounded turns primarily upon the meaning of the phrase "in the same manner" appearing in § 2120. Does it include the voting qualifications prescribed for "other school elections", or does it refer merely to procedure?

The natural meaning of the phrase is plain. When a public body is directed by statute to perform a certain act "in the same manner" as that already prescribed by an earlier statute for the doing of a similar act, the obvious intent is that all the necessary steps so prescribed in the earlier statute shall be taken under the later one.

Since it is the undoubted legislative purpose that a valid election be held, the conclusion seems clear that the phrase in § 2120 was used in the natural sense, that is, in a broad sense, and was designed to incorporate by reference all the election provisions of the related school laws necessary to enable a valid election to be held. Certainly, a statement of the qualifications of voters is a necessary provision. The School Building Act of 1953, and § 2120 of *Title* 14, are examples of the familiar statutory usage of incorporation by reference. It is a frequent practice, intended to avoid duplication and prolixity, and calls for practical and sensible interpretation in fitting the provisions of the adopted statute into the scheme of the adopting one. In *Taft v. Adams, 3 Gray (Mass.)* 126, Chief Justice Shaw said:

"When one statute thus refers to another, to avoid the prolixity arising from a repetition of all the provisions of the act referred to, it must be construed with this qualification, that the provisions of act referred to shall be applied in all those particulars, in which they can be applied without leading to absurd results; and if they cannot be applied in all particulars, they shall be applied as nearly as possible consistently with the provisions of the new act."

That case concerned a statute providing for an election of a county officer "in the manner prescribed" in another statute. It did

not involve the determination of voting qualifications, but the court's statement of the applicable rule of construction is pertinent. It was said:

> "When it is said in this statute, that county commissioners shall be chosen 'in the manner prescribed in the revised statutes,' we think this expression means not only the warrant for a meeting, and balloting by the voters in towns, but extends to all the other provisions necessary to give effect to the choice; such as returning, examining and declaring the votes, so as to make a complete election to the office."

In *Consolidated Common School District v. Wood, (Tex.Civ. App.)* 112 *S.W.2d* 231, 236, a statute, *Vernon's Ann.Civ.St. Art.* 2815, providing for dissolution of school districts "in the same manner provided for their consolidation" was held to incorporate by reference all the provisions of the consolidation statute, including those relating to the calling and holding of an election pursuant to the petition of qualified voters.

If the rule of these cases is sound, it would follow that the qualification provisions of § 314 are sufficiently incorporated into § 2120 by reference, since the adoption of such provisions is necessary to give effect to the election. Such a conclusion seems especially appropriate here, because § 2120 deals specifically with many matters of procedure, and if the phrase "in the same manner" does not embrace voting qualifications, it has only minor significance.

But we are met with a contention of the taxpayer that is not without plausibility. It is founded upon the legislative history of § 2120 and § 314, and upon a decision of the Superior Court in 1937 construing the language of § 2120, which at that time appeared as *Par. 2725 of the Revised Code of* 1935. This contention must now be examined.

First. Legislative history.

The forerunner of § 2120 is found in the fifth paragraph of § 53 *of the School Code of* 1921, 32 *Del.L. c.* 160. It provides, as does § 2120, that before bonds are authorized and issued by any school

district a special election shall be held "in the same manner" as other school elections. It also provides, as § 2120 does not, that: "At said election every person qualified to vote at a general election shall be entitled to vote." The subsequent deletion of this sentence came about in the following manner:

In 1923 the *School Code* was amended by adding a new *Section* 66 relating to elections in school districts outside of the City of Wilmington. 33 *Del.L.Ch.* 181. The first paragraph of that section, as far as here pertinent, provided:

> "In every School Election in any School District or Special School District outside of the City of Wilmington, whether held for the purpose of a referendum or to elect school officers, or otherwise, every citizen, male or female, resident of said District, who would be entitled at the time of the holding of the School Election, to register and vote in any election District of which said School District or Special School District is a part at a General Election, if such General Election were to be held at the time of such School Election, shall be deemed to be a qualified voter and entitled to vote at such School Election in the School District or Special School District where he or she then resides, regardless of the fact whether he or she is at that time a registered voter or not * * *."

This section, applying as it did to every kind of school election, rendered superfluous the above quoted sentence in § 53. Accordingly, when § 53 was amended in 1925, 34 *Del.L. c.* 173, that sentence was deleted.

The fifth paragraph of the former § 53 became the eighth paragraph of the new § 53.

In the *Revised Code of* 1935 the eighth paragraph of § 53 as amended appears as *Par.* 2725, and in the 1953 *Code* it appears as § 2120 of *Title* 14. No change of importance was made in the language.

As to the first paragraph of § 66 *of the School Code,* however, prescribing the general qualifications of voters at all school elections,

a different situation appears. It was carried into the 1935 *Code* as *Par. 2753* without change in substance, but in compiling the 1953 *Code,* the Code Commission re-wrote the paragraph and made substantial changes. *Sections 314 and 315 of Chapter 3,* dealing with "School Board Elections", are based upon *Par. 2753,* but the introductory language of that paragraph referring to "every School Election * * *, whether held for the purpose of a referendum or to elect school officers, or otherwise," has been omitted. As written, § 314 applies on its face only to the election of the members of the local School Board. Its application is further limited by § 302(a), which provides:

> "This Chapter applies to all Districts in Kent and Sussex Counties and to the following Districts in New Castle County: Claymont, Middletown, New Castle, Rose Hill-Minquadale."

Now, it is plain that if the language of § 2120, providing that the bond election shall be held "in the same manner as other school elections", is broad enough in itself to include the voting qualifications prescribed by § 314, all of the foregoing legislative history is immaterial. Defendant argues, however, that it follows from the legislative history that the quoted phrase must have originally referred only to procedure, because in the original statute a voting qualification was added, and when the voting qualification was dropped out the phrase retained its narrow meaning. Moreover, says defendant, it was so held by the Court in Banc in the case of *Du Pont v. Mills,* 9 *W.W.Harr.* 42 (39 *Del.* 42, 43), 196 *A.* 168, 119 *A.L.R.* 174.

Second. Du Pont v. Mills.

This case involved the legality of a bond issue authorized by a special act of the General Assembly of 1937, 41 *Del.L. c.* 171, for the purpose of borrowing money to erect a school building in Rehoboth. *Section 13* of that Act provided that before the bonds should be authorized and issued "a Special Election shall be held * * * in the same manner as other school Elections". The court said that § 13 of the special act was in substance a copy of the eighth paragraph of § 53 *of the School Code,* embodied in the *Revised Code of 1935 as Par. 2725.* Because of the legislative history of that sec-

tion, above discussed, the court held that the quoted phrase referred to procedure only and did not include voting qualifications. The court also held that the Special Act of 1937 was passed in derogation of the School Code and was not *in pari materia* with the provisions of the Code, and hence the general voting qualification statute, *Par.* 2753, was inapplicable.

Defendant argues that when *Par.* 2725 was codified in 1953 as § 2120, its scope was limited by the construction placed upon it by the Superior Court in the *Mills* case. Defendant invokes the principle that when a statute that has received judicial construction is re-enacted it carries with it the construction so placed upon it.

Defendant accordingly contends (1) that § 314 on its face does not apply to bond referendums or indeed in any respect to the Alfred I. Du Pont School District; and (2) that § 2120, as judicially construed prior to its codification, does not refer to voting qualifications. There is hence a *casus omissus,* says defendant, and the attempted referendum in the district is a nullity.

If this reasoning is correct, § 2120 is void for uncertainty and the greater part of the school building program must fail. The result is sufficiently startling to cause any court to hesitate to accept the somewhat technical reasoning upon which is based the alleged inadequacy of the language of § 2120 to incorporate the voting qualification of § 314. The opinion in *Du Pont v. Mills* recognizes the duty imposed upon courts to construe statutes to give them effect if it is reasonably possible to do so, and it was said that courts often "go far afield to avoid the consequences resulting from declaring invalid a statute, where grave questions of public convenience or necessity are involved". [9 *W.W.Harr.* (39 *Del.*) 42, 196 *A.* 179.]

We do not think, however, that we are required to go far afield to sustain the validity of the act here assailed. For the following reasons, we think that *Du Pont v. Mills* does not apply.

The rule of legislative approval of prior judicial construction by re-enactment of a statute is not a rule of law, but a rule of construction only. It must often yield to other and more persuasive con-

siderations. *American Ins. Co. v. Iaconi, Del.,* 89 *A.2d* 141, 153. Such considerations exist in this case.

The question before us involves not only the construction of § 2120, but the construction as a whole of the school election provisions of the entire School Code. When the Revised Code Commission codified the manifold laws relating to the public schools, it undertook, as authorized and directed by the General Assembly, to re-write the statutes in simple and direct language and to integrate and synthesize the multiplicity of statutes relating to the public schools. See the Report of the Revised Code Commission of December 31, 1952, *Vol. 2 Del.C. pp.* ix-xix. An examination of the school laws in the 1953 *Code* shows that the eighteen articles in *Chapter 71 of the* 1935 *Code,* the subsequent amendments to the 1935 *Code,* and other related statutes not found in *Chapter 71,* are incorporated in the 1953 *Code* as *Part* I of *Title* 14. These laws were re-arranged, revised, and to some extent re-written. They are set forth in twenty-one chapters, many of the subjects of which do not follow the headings or arrangement of the 1935 *Code.* As so codified, *Title* 14 is definitive law, and must be construed as such. *Monacelli v. Grimes, Del.,* 99 *A.2d* 255.

In these circumstances we think that all of the related provisions of *Title* 14 relating to school elections must be construed together and that construction must be adopted which achieves harmony and produces a reasonable result. It does not always follow, because a particular section has been judicially construed, that such construction was necessarily carried into the Code even if the language is unchanged. If the section stands alone, the prior construction may well control. But here we have a section that is closely linked to other sections in a comprehensive revision of statutes dealing with various aspects of the same subject—that of school district elections. *Section* 2120 is to be construed in the light of its bearing upon the related sections, and that construction which brings accord will be chosen.

Applying this principle, we see that the narrow construction of § 2120 contended for by defendant will produce a *casus omissus* and render the School Building Act of 1953 largely ineffective; whereas,

if the language of § 2120 be given its natural meaning, the section is brought into harmony with the related sections, and a public project of great moment is saved from failure. The choice is not difficult to make; the latter construction is the correct one.

Accordingly, we think that the legislative history and the prior judicial construction of § 2120 are without significance in this case.

Defendant advances a subsidiary argument based upon the language of certain sections of *Chapters* 9 and 11 of *Title* 14, relating to other school elections. *Section* 1107, relating to elections on changing boundaries of school districts, incorporates by specific reference the voting qualifications prescribed in § 314. *Section* 1108, relating to elections on the consolidation of districts, contains a like specific reference. *Section* 1905, relating to the raising of local school district taxes, also contains a specific incorporation of the provisions of § 314. Hence it is argued that the failure to incorporate in § 2120 a specific reference to § 314 is a manifest oversight.

This conclusion does not follow. None of the sections cited by defendant contains the phrase found in § 2120, i.e., that the election shall be held "in the same manner as other school elections". This suggests that the practice of incorporating the provisions of § 314 by specific reference is not uniform in all sections of the Title. And in fact § 1106, dealing with the procedure for changing the boundaries of special school districts, contains a third species of incorporation by reference. In that section it is provided that the question to be voted upon shall be submitted "to the qualified voters of the territory to be added to or taken from the Special School District".

Thus on the face of the Code there exists no uniform pattern of reference with respect to voting qualifications. In some of the sections the provisions of § 314 are specifically incorporated; in § 1905 the reference is to "qualified voters"; and in § 2120 appears the phrase we are here considering, viz., "in the same manner as other school elections".

We are justified in concluding that all of these three methods of referring to the conduct of the elections have the same purpose and meaning. Thus an analysis of the sections of *Title* 14 dealing with

school elections constitutes a refutation of defendant's argument and affords support for the conclusion above indicated.

Another argument of defendant must be noticed.

It is said that, legislative history apart, the phrase "in the same manner as other school elections" has been generally held to refer to procedural details only and not to embrace voting qualifications. *Du Pont v. Mills* is cited as so holding. The majority opinion in that case does, indeed, appear to adopt such a construction of the phrase, independent of its legislative history. But we find ourselves unable to agree with it. The cases cited do not, in our opinion, sustain the holding. They are for the most part cases turning on the construction and scope of constitutional provisions prescribing voting qualifications for general elections, which qualifications, it is held, may not be varied in the election of local officials to be chosen "in the manner" to be prescribed by law. These holdings do not touch the question before us, which is one of the construction of a statute embodied in a revised Code.

We are of opinion that § 2120, read together with other pertinent sections of *Title* 14, incorporates by reference the voting qualifications of § 314.

It follows that the question certified must be answered in the affirmative.