## REEDER *v.* BOARD OF SUPERVISORS OF ELECTIONS OF QUEEN ANNE'S COUNTY, MARYLAND ET AL.

[No. 286, September Term, 1972.]

*Decided June 6, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

Page H. Reeder in proper person.

Court did not wish to hear from appellees. *Francis B. Burch, Attorney General,* and *E. Stephen Derby, Assistant*

*Attorney General,* on the brief for State Administrative Board of Election Laws, part of appellees and *Walter Litvinuck* on the brief for Board of Supervisors of Elections of Queen Anne's County, other appellee.

BARNES, J., delivered the opinion of the Court.

The question presented to us by this appeal is whether the Circuit Court for Queen Anne's County (Wise, J.) properly sustained a demurrer, without leave to amend, to a petition for appeal filed by the appellant, Page H. Reeder, from a decision by the appellee, Board of Supervisors of Elections of Queen Anne's County (the Board), refusing to register the appellant to vote in Queen Anne's County "on local issues and offices only," on the ground that he was not a resident of the county.

The appellant alleged in his petition for appeal from the adverse action of the Board that he owns and lives in two houses. One of these properties is located in Baltimore City at 4709 Frederick Avenue. He has lived there since 1939 and is domiciled in Baltimore City. The other property is located at 53 Queen Anne Road, Kent Island Estates in Queen Anne's County, where he has lived since 1952 as a non-resident. It was further alleged that Queen Anne's County on every General Obligation Bond that is issued has "pledged a lien on his name and home" and that the refusal to permit him to vote on local issues and for local offices seriously violates his rights under the equal protection clause of Section 1 of the Fourteenth Amendment to the Federal Constitution.

The State Administrative Board of Election Laws was permitted to intervene in the action. Both the Board and the Intervenor demurred to the petition for appeal principally on the ground that since the appellant was domiciled in Baltimore City, he was a resident of that city for voting purposes and was not entitled to be registered as a voter in Queen Anne's County. The demurrer argued that the appellant could have only one domicile for voting purposes so that the refusal of the Board to register him was not a denial of his constitutional rights.

After a hearing, Judge Wise sustained the demurrer without leave to amend and in so doing, in our opinion, acted properly.

Article I, Section 1 of the Constitution of Maryland provides:

"All elections shall be by ballot; and every citizen of the United States, of the age of twenty-one years, or upwards, who has been a *resident of the State* for six months, *and of the Legislative District of Baltimore city, or of the county, in which he may offer to vote,* as of the time for the closing of registration next preceding the election, *shall be entitled to vote, in the ward or election district, in which he resides, at all elections hereafter to be held in this State.* A person, who shall have acquired a residence in such county or city, entitling him to vote at any such election, shall be entitled to vote in the election district from which he removed, until he shall have acquired a residence in the part of the county, or city, to which he has removed. : . ." (Emphasis added)

The term "election" is defined by Maryland Code (1957, 1971 Repl. Vol.) Art. 33, § 1-1 (a)(6), as follows:

" 'Election' means the process by which voters of the State, *or any county* or city thereof, vote for *any* party or public officer pursuant to the laws of this State or the United States, any constitution or constitutional amendment, public law, public act or proposition and unless otherwise indicated *shall include all elections, primary, general, special, local, congressional, presidential, or State-wide. It does not mean any municipal election* other than in Baltimore City unless otherwise specifically provided for in this article." (Emphasis added)

This definition includes voters of "any county" voting for any "public office" as well as "local" elections. The argument of the appellant that county elections are excluded from the

scope of Article 33 because they are "municipalities," and the only municipality included is Baltimore City, is clearly unsound in view of the definition and the references in other sections of Article 33 to county elections and local elections. See, *e.g.*, Sections 4A-6(a) (filing fees); 9-4 (filling local vacancies including county offices); 16-6(a) and 23-1(a) (county certification of questions for the ballot).

Article 33, Sections 3-4(a) and (b)(4), as amended, provide:

> "(a) *Qualified voters.* — Only persons, constitutionally qualified to vote in the precinct or district, as the case may be, shall be registered as qualified voters.
>
> "(b) *Constitutional qualifications.* — The constitutional qualifications of voters are the following; each one of which is applicable to every voter:"

* * *

> "(4) Resident of county or legislative district of Baltimore City, *in which he may offer to vote*, as of the time for closing of registration, next preceding the election;" (Emphasis added).

It is clear to us that under the relevant Maryland constitutional and statutory provisions, the petition for appeal shows on its face that the appellant, as a non-resident of Queen Anne's County, was not entitled to register as a voter for local issues or offices or otherwise. The Board acted properly in declining his petition to register. The decisions of this Court support the Board's action. *See, e.g., Gallagher v. Board of Elections,* 219 Md. 192, 207, 148 A. 2d 390, 398 (1959); *Rasin v. Leaverton,* 181 Md. 91, 28 A. 2d 612 (1942); and *Howard v. Skinner,* 87 Md. 556, 40 A. 379 (1898). *See also, Comptroller v. Lenderking,* 268 Md. 613, 303 A. 2d 402.

Nor does this refusal by the Board deny the applicant the equal protection of the laws guaranteed by Section 1 of the Fourteenth Amendment to the Federal Constitution.

The Supreme Court of the United States has recognized

the validity of a state voter requirement of bona fide residency in the state and in the subdivision in which a person offers to vote. *See Dunn v. Blumstein,* 405 U. S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972) in which Mr. Justice Marshall stated:

"... the States have the power to impose voter qualifications, and to regulate access to the franchise in other ways."
405 U. S. at 336, 92 S. Ct. at 1000, 31 L. Ed. 2d at 281.

It was stated later in the opinion in *Dunn:*

"We have in the past noted approvingly that the States have the power to require that voters be bona fide residents of the relevant political subdivision. *E.g., Evans v. Cornman,* 398 U. S., at 422; *Kramer v. Union Free School District,* [395 U. S.], at 625; *Carrington v. Rash,* 380 U. S., at 91; *Pope v. Williams,* 193 U. S. 621 (1904). An appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny."
405 U. S. at 343-44, 92 S. Ct. at 1004; 31 L. Ed. 2d at 285.

"The State's legitimate purpose is to determine whether certain persons in the community are bona fide residents." 405 U. S. at 351, 92 S. Ct. at 1007, 31 L. Ed. 2d at 289.

*See also Carrington v. Rash,* 380 U. S. 89, 85 S. Ct. 775, 13 L. Ed. 2d 675 (1965) and *Pope v. Williams,* 193 U. S. 621, 24 S. Ct. 573, 48 L. Ed. 817 (1904) cited in *Dunn* and *Carrington,* which sustained a requirement of this State that a person coming into Maryland must make a declaration of his intention to become a citizen and resident of Maryland in order to be registered as a qualified voter. It is apparent that such a requirement could not have been held to be constitutional if, as the appellant contends, a person could

become constitutionally entitled to vote merely by owning real property in a political subdivision of the State.

*See also* the case of *Hadnott v. Amos,* 320 F. Supp. 107 (N.D. Ala. — three judge court 1970), *affirmed per curiam,* by the Supreme Court of the United States, 401 U. S. 968, 91 S. Ct. 1189, 28 L. Ed. 2d 318 (1971). In *Hadnott,* the three judge court found that Drake was not a "resident" of Greene County, Alabama and that the County's action in refusing to register him was correct. The Court stated:

> "For election law purposes 'resident' means a domiciliary. * * * Concepts of domicile apply alike in the law of elections, of divorce, and of the administration of estates. * * * "

> * * *

> "Acquiring a domicile entails the happening of two concurrent conditions: (1) the act of changing residence and (2) the intent to reside either permanently or for an indefinite time in the future at the new residence. ... The act of changing residence and the intent to reside either permanently or indefinitely at the new residence coalesce to form an important element that is present when a new domicile is required — there must be a present intention to abandon permanently or indefinitely the former domicile. Temporary absence from one's residence without the intent to abandon completely the former domicile will not create a new domicile. . . .

> "A man has only one domicile. . . ."
> [Citations omitted]
> 320 F. Supp. at 114.

The appellant relies upon the decision of a three judge Federal Court in *Spahos v. Mayor & Councilmen of the Town of Savannah Beach,* 207 F. Supp. 688 (S.D. Ga. 1962), *affirmed per curiam,* 371 U. S. 206, 83 S. Ct. 304, 9 L. Ed. 2d 269 (1962) in which it was held that in the absence of state statutory proscription, a municipality of Georgia *could*

constitutionally allow property owners to vote in *municipal* elections. There is no holding that if non-resident property owners are not afforded the right to vote in local elections, a denial of equal protection of the laws results. The appellant's reliance on *Spahos* is in our opinion misplaced.

The appellant argued before us that to require him to contribute his property taxes to pay the interest and principal of the debt of Queen Anne's County without allowing him the right to vote in that county is the same type of situation which precipitated the War of the Revolution and the establishment of the United States of America. This political argument could well be made before the General Assembly in support of an amendment of the election laws, but it cannot afford judicial relief. Indeed, at the argument, the appellant who appeared *pro se* frankly told us that a member of the General Assembly had introduced a bill along the lines he desired, but that it had not been passed by the General Assembly.

> *Order affirmed, the appellant*
> *to pay the costs.*