WILLIAM J. HANRAHAN *v.* TOBY
ALTERMAN ET AL.

[No. 269, September Term, 1978.]

*Decided January 10, 1979.*

The cause was argued before GILBERT, C. J., and MOORE
and LOWE, JJ.

*William J. Chen, Jr.,* for appellant.

---

*Albert D. Brault,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellees Alterman, Kenton, Lederer, Mrazek, Muller, Smith and Cartledge. *Edward L. Genn* for other appellees.

MOORE, J., delivered the opinion of the Court.

Appellant, a defeated candidate, challenges the validity of the May 1977 Village Council election of Friendship Heights and The Hills, a special taxing district located in Montgomery County near the District of Columbia boundary line. The appellant's principal contention in his petition below was that the election was conducted in a manner which violated certain provisions of the Fair Election Practices Act. Md. Ann. Code art. 33, §§ 26-1 to -21 (1976 & Supp. 1978). Pursuant to Section 26-18 of the Act, appellant sought an "inquiry" into the election as well as a declaration that it was null and void. In addition, the petition prayed that the respondents, the seven successful candidates, be declared ineligible for election or for appointment to any public office or employment as a consequence of their alleged violations, pursuant to the penal provisions of the statute.[1] The lower court (Cahoon, J.) granted a motion for summary judgment filed by respondents and by both the Village Council and the Special Taxing District as intervenors. In an oral opinion, followed by a written order, it was held that Article 33 was neither applicable[2] to the Friendship Heights election by statutory enactment nor incorporated by reference by either the Montgomery County Code or the Rules and Procedures of Friendship Heights. We affirm.

---

1. Md. Ann. Code art. 33, § 26-16 (b) (1976).

2. Appellant's petition contained two counts. The first count sought relief under Article 33, Section 26-18. The second count alleged a violation of constitutional rights "to vote, to have a fair election, to have votes counted fairly, and to have votes cast fairly, [pursuant to] Article 7 of the Declaration of Rights of Maryland, Article I of the Constitution of Maryland, Article IV of the Constitution of the United States, and Amendments V, IX, X, XIV, XV, and XIX to the Constitution of the United States. . . ." The order signed by the court after its rendition of its oral opinion provided that Count II be severed for separate trial pursuant to the provisions of Maryland Rule 501(a) and further ordered, pursuant to Rule 605(a), that final judgment be entered in favor of the respondents and intervenors as to Count I, with an express determination that there was no just reason for delay in the entry of said final judgment. Accordingly the appeal is before us, and properly so, solely under Count I.

I

The villages of Friendship Heights and The Hills derived their status as a special taxing district from a public local law, Chapter 131 of the Laws of 1914. This law, as amended, is codified in Chapter 66 of the Montgomery County Code of 1972 (1978). The district's governing body is the Village Council, composed of seven members, who serve without compensation for two-year terms. Each member, as a "Village Councilman," must be a registered and qualified voter of Montgomery County, residing in Friendship Heights. Montgomery County Code § 66-4 (1978). The powers of the Council primarily involve the "opening, improving, widening, maintenance, repairing and lighting the streets, roads, lanes, alleys, sidewalks, parking, drainage, sewerage, sanitation, and other village improvements and for furnishing police and fire protection, clerical and other public service, including the removal of ashes, garbage and other refuse and the disposal thereof." Montgomery County Code §§ 66-2, 66-9 (1978). To finance the performance of these responsibilities, the local newsletter reflected that the Council proposed a budget for the fiscal year 1978 that provided for total revenues of $437,700 and total expenditures of $449,185.

The provisions of the public local law governing election to the Village Council are codified as Section 66-4 of Chapter 66 of the County Code.

> *"Sec. 66-4. Village council — Election; oath of office; vacancies.*
>
> On the second Monday in May in the year 1923, and on the same date in every second year thereafter, an election shall be held in the villages for the election of seven members, each of whom shall be a registered and qualified voter of Montgomery County residing in the villages, to be and constitute the 'Friendship Heights Village Council' for the next succeeding two years, and until their successors duly qualify, each of whom shall qualify on or before the fourth Monday in May thereafter by taking an oath, before an officer of the

law duly commissioned to administer same, to diligently and faithfully discharge the duties of the office. In case any such person so elected as village councilman fails to qualify within the time hereinbefore mentioned, or in case of any vacancy through death, resignation or otherwise, the *county council* shall fill the vacancy by the appointment of a registered and qualified voter of Montgomery County residing in the villages, who shall hold office for the term or unexpired term. *The election of the village councilmen as herein provided, shall be held under and in accordance with the laws of the State of Maryland, but the returns thereof shall be made to the county council of Montgomery County.* All registered and qualified voters of Montgomery County residing in the villages are eligible to vote at the elections; the election shall be conducted by at least four judges of election and at least four clerks, and whatever assistant judges and clerks as may be necessary, to be appointed by the village council, who shall serve with appropriate compensation. The polls of the election shall be open from seven A.M. to eight P.M., on the second Monday in May as hereinbefore provided. However, the foregoing hours may be modified by the county council by resolution, upon request of the Friendship Heights Village Council." [3] (Emphasis added.)

The subject of elections was covered also in Rules and Procedures adopted by the Friendship Heights Citizens Committee, the Council's predecessor, on March 11, 1974. According to the preamble, these rules were designed "as a guide for the administration of [the] villages.... [and were] not intended to be binding on future Committees." Article II thereof, entitled "Election," provided in Section I that the

---

**3.** As hereinafter discussed, it is appellant's contention on this appeal that the above sentence to which emphasis has been added adopts and incorporates by reference Maryland Annotated Code, Article 33 in its entirety; and that the exclusion of "any municipal election other than in Baltimore City" from the definition of "Election" contained in Article 33, Section 1-1 (a) (6) is of no consequence.

election of the Committee "shall be conducted under provisions of Chapter 66-Section 4 of the Montgomery County Code, Article 33 of the Code of Maryland and these *Rules and Procedures.*" Subsequent sections of the election article related to: *notice* (at least 90 days prior to the election); *nomination* (by at least 10 registered and qualified voters, filed 30 days prior to the election, accompanied by the candidate's certificate of acceptance); *proof of qualification for voting* (two weeks prior to the election, names of prospective voters must appear on a list of registered and qualified voters furnished by the Montgomery County Board of Election Supervisors); *method of voting* (by machine or paper ballots); *place of voting; election officials* (judges and clerks selected by the Committee); *poll watchers* (appointed by candidates to observe voting and counting); *counting of ballots* (by judges and clerks); *certifying and reporting of ballots* (notification of certified election returns by incumbent chairman to the Montgomery County Council); *voting by ill and disabled persons* (entitlement to vote as absentee voter); *voting by persons absent from the Washington Metropolitan area* (following absentee voting procedures outlined in Section II of the Rules and Procedures and in Article 33 of the Code of Maryland); *emergency absentee ballots* (procedure for absentee voting "[w]ithin a period of seven days prior to an election and up to and on the day of the election but prior to the time the polls close").

The 1977 election was held on May 9, 1977. Early notice of the election was given in the 1976 year-end report of the Chairman of the Council, Dr. Alfred Muller, to Friendship Heights residents. It was stated therein that the election would be held "under the provisions of Chapter 66, Section 4 of the Montgomery County Code, Article 33 of the Code of Maryland." However, the Board of Election Supervisors for Montgomery County — the body designated by Article 33 to supervise all elections within its coverage — did not deem the election within its jurisdiction. The League of Women Voters of Montgomery County agreed to supervise it. In a letter from the League to Dr. Muller dated March 22, 1977, the League stated its understanding that "[o]ur responsibilities,

[are] based on the provisions of Chapter 66, Section 4 of the Montgomery County Code, Article 33 of the Code of Maryland, and the Rules and Procedures of the Friendship Heights Citizens Committee." The specific undertakings of the League included: 1) the printing of 2200 ballots; 2) printing a form for absentee ballot requests, handling requests for absentee ballots, and confirming the eligibility of absentee voters; 3) establishing a voter list for residents of Friendship Heights, as of two weeks prior to the election; 4) supplying 8 election day workers, to be on the premises between 7 a.m. and 8 p.m.; 5) counting and certifying the ballots; and 6) helping to publicize the election.

Nine candidates filed for the seven seats. In the election, appellant and Margaret Ann Duruz Wessely, an incumbent member of the Council, were defeated.[4] The appellant received 101 votes, the lowest number cast for any candidate, while the defeated incumbent received 131 votes. The highest and lowest vote tally for the successful candidates were 398 and 251, respectively.

Within thirty days of the election, appellant instituted suit pursuant to Section 26-18 of Article 33, alleging irregularities in the conduct of the election by the seven successful candidates. The list of alleged infractions included: 1) the publication and distribution of a sample ballot without

---

4. The defeated incumbent filed an action in the Circuit Court for Montgomery County in Law No. 47107, prior to the filing of appellant's petition. The case, however, was settled and withdrawn and a settlement "Memorandum of Understanding" was entered into between her and Friendship Heights and the Friendship Heights Village Council in which Wessely's reasons for withdrawing her suit were specifically set forth. While she maintained that Article 33 of the Code was made applicable to the 1977 Election for the Village Council by virtue of Section 66-4 of the Montgomery County Code and Art. II, Sec. 1 of the Rules and Regulations of the Council, she, nevertheless, was persuaded that because of the significant difference between the votes received by the successful candidates, "it [would be] improbable that the Court would set the election aside, even if it should find that the election has not been conducted in strict accord with the election laws." In contrast, the position of the District and Council set forth in the same settlement memorandum was that no violations had occurred, the Rules and Procedures were not "to incorporate all aspects of the election laws of the State of Maryland," and "the differences of substance between the [State and the District did] not warrant the total application of [the] detailed election laws . . . particularly because to do so might inhibit persons from coming on to the Council or participating in local government."

identification of an authorized agent; 2) the publication and distribution of a sample ballot which was intended to, and did, confuse voters; 3) failure to appoint a campaign treasurer; 4) failure to identify a campaign treasurer on literature distributed prior to and on the day of the election; 5) improper use of absentee ballots; and 6) failure to file certificates of acceptance of nomination. The appellant also contended that the election was conducted in violation of the Friendship Heights Village Council's Rules and Procedures.

The lower court, after sustaining appellant's demurrers without leave to amend, granted a summary judgment stating that:

> "the rights of the parties are not governed by the provisions of Article 33 of the Annotated Code of Maryland, 1976 Replacement Volume, as amended, either by statutory enactment or by reference to the said Article 33 in the election rules of the Village Council, in that the election *sub curia* is a 'municipal' election exempted from the provisions of said Article and that the election is governed and controlled by the specific provisions of Section 66-4, Montgomery County Code. . . ."

## II

It is appellant's position, precisely stated in his reply brief, that five words in the public local law [5] governing the election to the Village Council, adopted and incorporated by reference

---

5. The Court of Appeals has made the following distinction between a public local law and a public general law:

> "[I]t may be said that a 'public local law' is a statute dealing with some matter of governmental administration peculiarly local in character, in which persons outside of that locality have no direct interest, and a 'public general law' is one which deals with a subject in which all the citizens of the state are interested alike, and the fact that it permits or directs differences in matters of mere administrative detail suited to the peculiar needs of localities does not make it any the less a public general law."

Norris v. Baltimore, 172 Md. 667, 681, 192 A. 531 (1937). *See also* 2 Sutherland Statutory Construction §§ 40.02, 40.08 (4th ed. 1973).

the entire Maryland Election Code as contained in Article 33
and its thirty-one subchapters. The alleged incorporating
words are "under and in accordance with," contained in the
following sentence of Section 66-4 of the Montgomery County
Code:

> "*The election of the village councilmen as herein
> provided, shall be held under and in accordance with
> the laws of the State of Maryland, but the returns
> thereof shall be made to the county council of
> Montgomery County.*" (Emphasis added.)

Before proceeding to assess the validity of appellant's
contention with respect to the doctrine of legislative
incorporation by reference, we deem it important to make this
threshold observation: by the definition contained in Section
1-1 (a) (6) of Article 33, an election is "the process by which
voters of the State, or any county or city thereof, vote for any
party or public officer. . . ." Municipal elections are
specifically excluded by the final sentence of the definition [6]
which reads:

> "It does not mean any municipal election other than
> in Baltimore City *unless otherwise specifically
> provided for in this article.*" (Emphasis added.)

We are confronted, therefore, initially with a question as
to the status of a special taxing area for purposes of Article
33.[7] The Municipal Corporation article of the Maryland

---

6. The application of specific provisions of Article 33 to incorporated
municipalities is illustrated by Section 29-10 (financial disclosure act
requirements, substantially the same as the subtitle, to be enacted by each
county of the state, the city of Baltimore, and each of the incorporated
municipalities); and Section 30-2 (disclosure by persons doing public business
with the state, county, incorporated municipality, or other political
subdivision of the state). It is interesting to note that notwithstanding the
general exemption of municipal elections contained in the definition, in at
least one instance, a subchapter is again specifically placed outside the scope
of municipal elections. *See* Section 27-3 providing that the provisions of
Chapter 27, relating to absentee voting, apply "to elections of all candidates,
constitutional amendments and other questions ... but, with the exception
of Baltimore City, [do] not include municipal elections in any municipal
corporation."

7. For a discussion on the role of special districts in government, *see* D.
Bowen & R. Friedman, *Local Government in Maryland,* in 3 Studies in
Government 119 (Univ. of Md. 1955).

Code [8] specifically excludes "any special taxing area or district" from the definition of municipal corporations.[9] The Court of Appeals has had occasion in the recent past to consider the status of the Friendship Heights Special Taxing District. In *Barlow v. Friendship Heights Citizens' Committee,* 276 Md. 89, 92, 344 A. 2d 415 (1975), Judge Singley noted that the District, by statutory definition, is not a municipal corporation "nor can it be, because it exercises no political powers." He went on to say that "[i]f the Committee can be categorized at all, it would be as a *quasi-municipal corporation,*[10] to which has been transferred a segment of the State's power, in order that a particular purpose may be accomplished." [11] (Emphasis added.) *Id.* at 92-93.

---

8. Md. Ann. Code art. 23A, §§ 1-48 (1973 & Supp. 1978).

9. Md. Ann. Code art. 23A, § 9 (a) (1973). The court, in Neuenschwander v. Washington Suburban Sanitary Commission, defined a municipal corporation as, "a department of the government of the State, created by the Legislature with political powers to be exercised for the public welfare." 187 Md. 67, 74, 48 A. 2d 593 (1946).

10. One authority has defined quasi-municipalities as:

"[T]hose organizations which are deemed corporations but which are held not municipal corporations, *strictly speaking,* but which resemble municipal corporations in some respect.... [A] quasi-municipal corporation is a public agency created or authorized by the legislature to aid the state in, or take charge of, some public or state work, other than community government, for the general welfare.... They are bodies which possess a limited number of corporate powers and which are low down in the scale or grade of corporate existence, and consist of various local government areas established to aid the administration of public functions."

E. McQuillin, 1 *The Law of Municipal Corporations* § 2.13 at 151 (3d ed. 1971). Although special districts are not, "in the strict sense," municipalities, they may be considered to be municipal corporations for the purpose of particular statutes or constitutional provisions. Unfortunately, there are no general rules to determine such instances. The determination depends on the specific issue involved in conjunction with the legislative intent when using the term municipality. *See id.* §§ 2.20, 2.23, 2.27, 2.28.

11. The Court's narrow holding in Barlow was that the Friendship Heights Village Council (then called "Committee") had the implied power to sue on behalf of the special taxing area if it believed that its monies had been diverted to the benefit of individual members of the Committee or improperly expended. *See also* Friendship Heights v. Funger, 265 Md. 339, 289 A. 2d 329 (1972), in which the Court affirmed a holding that Friendship Heights lacked capacity to bring an action for declaratory judgment with regard to agreements concerning zoning and approved master plans. It was held that "[w]hile the [Council] is empowered to make certain public improvements,

In the instant case, the lower court held, and we think correctly, that if the term "election," as defined in Article 33, was not applicable to municipal corporations (except Baltimore City), then perforce it would be inapplicable to the special taxing area of Friendship Heights.[12] As the court observed:

> "It would seem incongruous for the legislature to have excluded from its regulatory process the elections to municipal corporations proper but to include the more limited form of political subdivisions of quasi municipal corporation."

Our concurrence that Article 33 is by definition inapplicable to the special taxing area of Friendship Heights, except when otherwise specifically provided, is not, however, dispositive of this appeal. The question remains whether, as also contended by appellant, the General Assembly of Maryland incorporated Article 33, including subtitle 26,[13] the Fair Election Practices Act, when it enacted Chapter 131 of the Laws of 1914, as amended, and as codified in Chapter 66 of the Montgomery County Code.

---

nowhere is it expressly given the power to sue and be sued." *Id.* at 342. However, the question of implied power to sue for breach of a contract was expressly reserved.

12. We reject out of hand appellant's argument that in Reeder v. Board, 269 Md. 261, 305 A. 2d 132 (1973), the Court of Appeals interpreted the definition of "election" in Article 33 so as to include local elections, without restriction, and that Article 33, in its entirety, is applicable to such elections. There, the appellant, a property owner in, although a nonresident of, Queen Anne's County challenged the refusal of the Board of Supervisors of Elections of the County to register him to vote "on local issues and offices only." Despite the specific inclusion of county elections in Article 33 coverage, the appellant nevertheless argued that county elections were excluded because they were municipalities. The court refused to accept this interpretation because of the specific inclusion of counties in the definitional provision and various other sections. Furthermore, the case held that the constitutional qualifications for voting in Maryland — there, the requirement for local residence — as contained in Article 33, Sections 3-4 (a) and (b) (4) — are applicable to all elections. Such a conclusion is ineluctable. Clearly, also, the disqualifications contained in Section 3-4 (c) (conviction of crime) and Section 3-4 (d) (persons under guardianship) would be inherently applicable to *all* elections by "qualified" voters in this State, the definitional exemption of municipal elections in Section 1-1 (a) (6), notwithstanding.

13. The Attorney General has recognized that a municipality may incorporate by reference *specific* provisions of Article 33 so as to render them applicable to municipal elections. 42 Op. Att'y Gen. 177, 178 (1957).

## III

The law recognizes "a special class of related statutes, . . . the relationship [between which] results from the fact that one statute adopts the terms of the other without restating them.[14] Incorporating statutory provisions by reference, partially or entirely, into legislation has been long recognized as an acceptable practice on both the state [15] and federal levels [16] unless prohibited by constitutional provisions. "The purpose of incorporating, [adopting,] or referring to prior statutes is to avoid encumbering the statute books with useless repetition and unnecessary verbiage." [17] When passed, the incorporated act becomes a part of the incorporating legislation; it is as if the incorporated act was specifically written into the law.[18]

Reference statutes may be either *specific*[19] — reference by title or section number — or *general*[20] — reference to the

14. *See generally* 2A Sutherland Statutory Construction § 51.07 (1973).

15. In Maryland *see* Hill v. Mayor and Town Council of Colmar Manor, 210 Md. 46, 122 A. 2d 462 (1956); Mayor and Town Council of Landover Hills v. Brandt, 199 Md. 105, 85 A. 2d 449 (1952); Wilkinson v. McGill, 192 Md. 387, 64 A. 2d 266 (1949). *See also* Werntz v. Jennings, 101 A. 2d 806 (Del. 1954); General Installation Co. v. University City, 379 S.W.2d 601 (Mo. 1964); State v. Mitchell, 181 S.W.2d 496 (Mo. 1944); Knowles v. Holly, 513 P. 2d 18 (Wash. 1973); Roehl v. Public Utility District No. 1 of Chelan County, 261 P. 2d 92 (Wash. 1953).

16. Hassett v. Welch, 303 U. S. 303 (1938); Engel v. Davenport, 271 U. S. 33 (1926); Director, Office of Workers' Compensation Programs v. Peabody Coal Co., 554 F. 2d 310 (7th Cir. 1977); United States v. Morrison, 531 F. 2d 1089 (1st Cir. 1976); Somermeier v. District Director of Customs for the Port of Los Angeles-Long Beach, 448 F. 2d 1243 (9th Cir. 1971); Yarborough v. United States, 230 F. 2d 56 (4th Cir. 1956); Young v. United States, 178 F. 2d 78 (9th Cir. 1950); Kissane v. City of Anchorage, 159 F. Supp. 733 (D. Alaska 1958); Government of Guam v. Kaanehe, 137 F. Supp. 189 (D. Guam 1956).

17. 82 C.J.S. *Statutes* § 71 (1953). *See* Werntz v. Jennings, 101 A. 2d at 809; State v. Lee, 66 S.W.2d 521, 523 (Mo. 1933).

18. 82 C.J.S. *Statutes* §§ 70, 370 (1953); Young v. United States, 178 F. 2d at 80. Government of Guam v. Kaanehe, 137 F. Supp. at 190; General Installation Co. v. University City, 379 S.W.2d at 604-05; Knowles v. Holly, 513 P. 2d at 22.

19. *See, e.g.,* Young v. United States, 178 F. 2d 78 (9th Cir. 1950) (" '[e]xcept as otherwise provided in this chapter, the administrative, definitive, and penal provisions under sections * * *, 712-715, * * * of this title shall be for application under this chapter' ").

20. *See, e.g.,* Kissane v. City of Anchorage, 159 F. Supp. at 735 ("assessments are to be determined in accordance with established Territorial and local special assessment practice").

general law on the subject.[21] Unless altered by statute, as in Maryland, the substantial difference between these two types of related statutes is that a general reference statute incorporates in its coverage all subsequent amendments and modifications to the incorporated act while specific reference statutes do not.[22] It is settled that although general reference statutes are permissible, the language of incorporation must be specific enough to inform the citizenry of the applicability of the incorporated provisions. This is particularly essential as a matter of due process of law when the incorporated statute contains penal provisions. An alleged incorporation of penal provisions must be strictly construed.[23]

The question before us in the instant appeal is whether the language contained in the public local law contains sufficient specificity to qualify as a general incorporation of Article 33, in its entirety, as contended by the appellant. Again, to refer to the alleged incorporating language, Section 66-4 provides with respect to the election of Friendship Heights Councilmen as follows:

> *"The election of the village councilmen as herein provided, shall be held under and in accordance with the laws of the State of Maryland, but the returns thereof shall be made to the county council of Montgomery County."* (Emphasis added.)

It is our conclusion that the emphasized language is not sufficiently specific to accomplish the result strenuously

---

21. 2A Sutherland Statutory Construction §§ 51.07, 51.08 (4th ed. 1973). *See generally,* Somermeier v. District Director of Customs for the Port of Los Angeles-Long Beach, 448 F. 2d 1243 (9th Cir. 1971); Werntz v. Jennings, 101 A. 2d at 812-13.

22. George Williams College v. Village of Williams Bay, 7 N.W.2d 891 (Wisc. 1943); 2A Sutherland Statutory Construction § 51.07 (1973). In Maryland, this general rule of statutory construction has been altered by Md. Ann. Code art. I, § 21 (a) (1976) which provides:

"Whenever a provision of the public general or public local laws of this State refers to any portion of this Code, or to any other law, the reference applies to any subsequent amendment to that portion of the Code or other law, unless the referring provision expressly provides otherwise."

23. Culotta v. Raimondi, 251 Md. 384, 389, 247 A. 2d 519 (1968); Smith v. Higinbothom, 187 Md. 115, 130, 48 A. 2d 754 (1946); 82 C.J.S. Statutes § 389 (1953).

asserted by appellant. First, it is appellant's argument that the language "under and in accordance with the laws of the State of Maryland" is meaningless unless it applies to the totality of Article 33. We point out that the alleged incorporating language does not refer to "general election laws" as was the case in *Mayor and Town Council of Landover Hills v. Brandt,*[24] *infra,* and that furthermore, there are numerous "laws of the State of Maryland" contained in the Maryland Constitution and the Annotated Code, other than Article 33, which refer to elections. These include many provisions which would scarcely affect special taxing area elections but a significant number which very well might be applicable: the Constitution of Maryland, Art. I, §§ 1-7; Art. II, §§ 1B-4 (Executive Department); Art. III, §§ 3, 6, 7, 42, 47, 49 (Legislative Department); Art. IV, §§ 3, 11, 12, 41, 44 (Judiciary Department); Art. V, §§ 1, 2, 7, 8 (Attorney General and State's Attorneys); Art. VI, § 1 (Treasury Department); Art. VII, §§ 1, 2 (Sundry Officers); Art. XI, §§ 1, 3 (City of Baltimore); Art. XIV, § 1 (Amendments to the Constitution); Art. XV, §§ 4, 7 (Miscellaneous); Art. XVI, § 5 (The Referendum); Art. XVII, §§ 1, 2 (Quadrennial Elections); Annotated Code of Maryland, Art. 2B, § 88 (1976 & Supp. 1978) (restrictions on sale of alcoholic beverages on election days); Art. 27, § 28 (1976) (bribery, etc. of voters), § 452 (1976) (placing political posters, etc. in certain counties prohibited); Art. 41, § 15D (1978) (election of Lieutenant Governor), § 59 (1978) (clerical help for election business); Art. 59A, § 35 (Supp. 1978) (voting rights of the mentally retarded); Md. [Cts. & Jud. Proc.] Code Ann., §§ 3-503 to -504 (1974) (liability of broadcasting stations for defamatory statements of candidate (or others) for public office); municipal elections are governed by specialized provisions Art. 23A, §§ 2 (29), 19, 19A, 25, 29, 30, 40, 41, 45, 46, 47 (1973 & Supp. 1978) and Art. 23B, §§ 25-42 (1973 & Supp. 1978).

Secondly, appellant contends that his position on the issue of incorporation by reference is supported by the cases of *Mayor and Town Council of Landover Hills v. Brandt,* 199 Md.

---

24. 199 Md. 105, 85 A. 2d 449 (1952).

105, 85 A. 2d 449 (1952), and *Hill v. Mayor and Town Council of Colmar Manor*, 210 Md. 46, 122 A. 2d 462 (1956). We disagree. The *Brandt* case presented a challenge to the correctness of a judicial recount declaring that appellee was the duly elected Mayor of the Town of Landover Hills in the May 1951 election. The sole question on appeal was whether Article 33 provisions for court review of contested elections were adopted by reference. Judge Henderson, speaking for the Court, pointed out that Article 33, as then written, governed all cases of contested elections and provided for an appeal to the Court of Appeals. It was held that these provisions for judicial review were "adopted by reference" by Chapter 465, Acts of 1945, the public local law incorporating the town of Landover Hills. Section 12 thereof authorized the appointment of judges of elections and then provided that:

> "[T]he rules and procedure of conducting the election shall be governed by the *general election law of the State of Maryland on any question not provided for in this charter.*" (Emphasis added.)

199 Md. at 108. Appellant concedes that the alleged incorporating language in the instant case stating that the election of councilmen "shall be held under and in accordance with the laws of the State of Maryland" is not as specific as that in *Brandt.* We quite agree and find, for this reason among others, that his reliance upon *Brandt* is misplaced.

Similarly unavailing is *Hill v. Town of Colmar Manor,* 210 Md. 46, which presented a question as to whether write-in votes in a town election were proper and should have been counted. The issue arose in a mandamus proceeding to require the Mayor and Town Council to count write-in votes cast for appellants for the offices of mayor and councilman in the Third Ward, the appellants having failed to follow the procedures prescribed by the town charter that their names be printed on the ballot. The trial court sustained a demurrer to the appellants' petition and the Court of Appeals reversed. In an opinion by Judge Brune, it was disclosed that the trial court had rejected the contention that the provisions of then Section 68 of Article 33 of the Code, permitting write-in votes,

had been incorporated by reference by Section 377 of the public local laws establishing the town. The pertinent language of Section 377 of the town charter was as follows:

"All elections for town purposes shall as nearly as practicable be conducted as are elections for county officers in Prince George's County, except as herein provided."

*Id.* at 54. In holding that the write-in votes for the appellants were proper and should have been counted, the court pointed out that the case turned on the sufficiency of the language used in the above quoted incorporating provision of Section 377. After holding that the language was adequate for incorporation, the court pointed out that the clause in the Colmar Manor Charter was broader than that contained in the Charter of Landover Hills. *Id.* at 58. In our judgment, the language is also more encompassing than the five words upon which appellant relies here.

At all events, the basic test as to the sufficiency of incorporating language is that of legislative intent. As Judge Brune stated in *Colmar Manor*:

"The question is one of legislative intent, not of constitutional right nor yet of legislative power. A rule under which the effectiveness or extent of incorporation by reference of one statutory provision into another would depend upon whether the matter to be incorporated is minor or procedural on the one hand, or major or substantive on the other, would lead to endless confusion. The *Landover Hills* and the *Blunt*[25] *Cases* do not rest upon such a rule or distinction; each rests upon the interpretation of the language used in the light of the circumstances surrounding its use."

*Id.* at 57-58.

---

**25.** Board of Supervisors of Elections of Baltimore City v. Blunt, 200 Md. 120, 88 A. 2d 474 (1952).

Before turning to the question of legislative intent, we feel the present case should be placed in proper prospective, *vis-à-vis Brandt* and *Colmar Manor.* Here, appellant claims that the entire elections code, not some specific section as in the cases cited, is imported into the provisions of the public local laws establishing Friendship Heights. According to appellant's theory of the case, not only Chapter 26, the Fair Election Practices Act — the alleged violations of which are essentially involved in the petition filed below — but a significant number of the 31 chapters of Article 33 are applicable to this special taxing district.

We are unable to accept the suggestion that a legislative body which was so specific in its exclusion of municipal elections, in the absence of specific inclusion, thereafter intended to incorporate Article 33 by such a scanty provision as that which here confronts us.[26] We are reinforced in our rejection of any such notion by the realization that the special taxing district here involved, although receiving some significant revenues and making proportionate expenditures on an annual basis, is yet small in geographic area and population, and limited in its governmental authority; and its elections attract an exceedingly small number of voters, approximately 400 in 1977. It hardly comports with logic or sound public policy that the enormous regulatory framework of the Maryland Election Code was intended by the legislature to be applicable in such circumstances.[27]

Perhaps most importantly, we cannot find that the General Assembly intended to incorporate by reference the penal

---

**26.** Even assuming that we might decide this case on the basis of some lesser application of Article 33 — specifically, Chapter 26 — we find no manifestation of a legislative intent that the public local law incorporate that chapter. Section 1, Chapter 26 is entitled "Elections to which applicable" and states: "The provisions of this subtitle shall apply to all elections in which ballots shall be cast pursuant to the provisions of this article." It is clear, there being no qualification of the term "election," that the definition intended is that which is employed in Article 33, Section 1-1 (a) (6). That definition, as stated earlier, excludes municipal elections.

**27.** Furthermore, as previously noted, the local Board of Supervisors of Elections did not consider the Friendship Heights election in May 1977, or at any time, to be subject to its jurisdiction, an interpretation which is, of course, entitled to some weight. *Cf.* Smith v. Higinbothom, 187 Md. at 132 ("long-continued and unvarying construction applied by administrative officials" may be persuasive if statute is susceptible to two constructions).

provisions of the Fair Election Practices Act contained within sections 26-16 (b), 26-18 (g), and 26-20.[28] Candidates who violate these provisions face one or more of the following penal sanctions: a $1,000 fine; a one-year imprisonment term; and a four-year period of ineligibility for any public or party office. As mentioned previously, due process guarantees require that the applicability of penal provisions be explicitly set forth by the legislature so that the public be made clearly cognizant of their existence and scope.[29] We must reject appellant's contention that the general and nebulous statutory language upon which he relies, is constitutionally sufficient notice of the criminal laws and penalties to which appellees subject themselves by their candidacies.[30]

It may be, as appellant suggests, that the existing laws relating to the election of the Friendship Heights Council are not commensurate with its growth and development. This, however, is a matter to be addressed to the General Assembly of Maryland for appropriate amendment to the public local law; and it is not for this Court to fill any legislative gaps which may exist.

We deem appropriate a final word with respect to the references to Article 33 in the Rules and Procedures of Friendship Heights. Although the District may have implied power to adopt such Rules and Procedures, a question we do

**28.** The legislature, in enacting the Fair Election Practices Act, intended to provide for "the regulation and control of campaign financing and to insure a system of centralized responsibility for campaign funds and expenditures." Parker v. Junior Press Printing Service, Inc., 266 Md. 721, 726, 296 A. 2d 377 (1972). By the terms of Article 33 and subtitle 26, municipalities are clearly excluded from its coverage unless there is a specific provision to the contrary. *Accord,* 42 Op. Att'y Gen. 177, 178 (1957). No such provision exists here.

**29.** *See* Smith v. Higinbothom, 187 Md. at 131 ("no man can be held guilty of violating a statute unless the act with which he is charged comes plainly within both the letter and the spirit of the statute").

**30.** *Compare* Young v. United States, 178 F. 2d at 79-80 where the court held the following language sufficient to incorporate penal provisions:

" 'Except as otherwise provided in this chapter, the administrative, definitive, and penal provisions under sections * * *, 712-715, * * * of this title, shall be for application under this chapter.' "

*See also* Yarborough v. United States, 230 F. 2d 56 (4th Cir. 1956); Government of Guam v. Kaanehe, 137 F. Supp. 189 (D. Guam 1956).

not decide, the references therein to Article 33 are obviously ineffective to make the State Code legally enforceable. The Friendship Heights Council is totally lacking in the power either to enact an election code or to incorporate one by reference. Not even the county has the power to legislate in this field since it has been pre-empted by the State. *County Council for Montgomery County, Maryland v. Montgomery Association,* 274 Md. 52, 333 A. 2d 596 (1975). Furthermore, to the extent that the petition below was based upon alleged violations of the Rules and Procedures,[31] we observe that no sanctions are prescribed for violation of their provisions.

*Judgment affirmed; appellant to pay the costs.*

---

**31.** In addition to Section 1, the general powers provision, the appellant alleged in his petition violations involving Sections: 3 (candidate's certificate of acceptance should accompany the nomination); 11 (voting by ill and disabled persons); 12 (voting by persons absent from the Washington Metropolitan Area); and 13 (emergency absentee ballots).