500 A.2d 1027

**James M. SMITH, Assignee,**

v.

**PLYMOUTH LOCOMOTIVE WORKS, INC.**

**No. 83, Sept. Term, 1984.**

Court of Appeals of Maryland.

Dec. 3, 1985.

Christopher R. West (Lewis S. Goodman and Gebhardt & Smith, on brief), Baltimore, for appellant.

Christopher C. Tsien (Patricia E. McDonald and Cable, McDaniel, Bowie & Bond, on brief), Baltimore, for appellee.

Argued Before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

COLE, Judge.

The issue which this court must decide is whether Maryland Code (1975, 1983 Repl.Vol.), § 15–101(b) of the Commercial Law Article, which incorporates by reference "any act of Congress relating to bankruptcy," is limited to the federal law existing in 1975 or whether it adopts the subsequent amendments to the federal bankruptcy code.

We set forth a shortened version of the facts that give rise to this issue. On October 7, 1981, an assignment for the benefit of creditors proceeding, entitled In the Matter of the Trust Estate of A & B Liquidating, Inc., was filed in the Circuit Court for Baltimore County by James Smith, the assignee for the benefit of creditors of A & B Liquidating Inc., formerly known as Yale Industrial Trucks—Baltimore/Washington, Inc. (hereinafter "Yale"). On November 24, 1982, Smith filed a Bill of Complaint to set aside preferential transfers that had been made by Yale. Counts 18 and 29 prayed for damages against Plymouth Locomotive Works, Inc. (hereinafter "Plymouth") based on two checks written to Plymouth by Yale.

The parties stipulated that (1) there was a transfer by an insolvent, (2) the transfer occurred within the 90 day period preceding the filing of the assignment for the benefit of creditors proceeding, and (3) the transfer enabled Plymouth to receive more than it would have received if the assignment had been a case under Chapter 7 of the U.S. Bankruptcy Code (11 U.S.C. § 101 *et seq.*).

The statutory provisions which are at the core of our discussion are §§ 15–101(b) and (c) of the Commercial Law Article, which provide as follows:

Section 15–101—*Preferences in insolvency.*

(b) *Preferences, payments, and transfers.—All preferences,* payments, and transfers made or suffered by the insolvent *which are* fraudulent, *void, or voidable under any act of the Congress of the United States relating to bankruptcy are* fraudulent, *void,* or voidable, respectively, *under this subtitle.*

(c) *Powers of assignee or receiver.*—Any assignee for the benefit of creditors or receiver of the assets of an insolvent may set aside any:

(1) Fraudulent conveyance as defined in Subtitle 2 of this title;

(2) Preferential transfer made by the insolvent to or for the benefit of a creditor within four months of the commencement of the proceeding for or on account of an antecedent debt if:

(i) The transfer was made or suffered by the insolvent; and

(ii) The creditor receiving the preference or his agent had, at the time when the transfer was made, *reasonable cause* to believe that the insolvent was insolvent. [Emphasis supplied].

Smith stipulated before the circuit court that he was unable to prove that Plymouth had, at the time the transfer was made, reasonable cause to believe Yale was insolvent as required under § 15–101(c)(2)(ii). Smith claimed that he was not so required because he was proceeding under § 15–101(b), which made the transfer void under "any act of the Congress of the United States relating to bankruptcy," and that the Federal Bankruptcy Code enacted in 1978 no longer requires proof of reasonable cause. Plymouth rejoined by contending that § 15–101(b) is limited to the Federal Bankruptcy Code as it existed in 1975 when § 15–101 was enacted, and hence Smith must establish that

Plymouth had reasonable cause to believe Yale to be insolvent.

The circuit court concluded that § 15–101(b), notwithstanding the 1978 amendment to the Bankruptcy Law, incorporated by reference only those provisions that existed in 1975 when § 15–101 was adopted. The circuit court granted summary judgment for Plymouth. This Court on its own motion issued its writ of certiorari.

Smith contends before us that the circuit court erred in holding that § 15–101(b) only incorporates the federal bankruptcy statute as it existed 1975 when § 15–101(b) was enacted. He argues that the section of the Sutherland Treatise relied on by the circuit court was merely a summary of an older rule of law, and that both Sutherland and Maryland authority adopt the majority rule incorporating subsequent amendments. By contrast, Plymouth argues that when read together, §§ 15–101(b) and (c) require the assignee to show a creditor had "reasonable cause" to believe that the debtor was insolvent. Plymouth indicates that § 15–101(c) is the specific and controlling language of the section, while § 15–101(b) serves only a definitional, general function and does not adopt any changes in the Bankruptcy Law.

We begin our resolution of the issue by taking a cursory glance at the development of preferential transfers in insolvency proceedings. At common law, Maryland had its own system of administering the estates of insolvents. Under these procedures, a debtor could by payment or other transfer lawfully prefer any one or more of his creditors over other creditors so long as the transaction was to pay or secure the payment of the debt. Fraudulent transfers were prohibited. In 1880, the legislature adopted a comprehensive insolvency act, § 13 of which provided that all preferences made within 3 months of insolvency would be void. The Act of 1880, with modifications, eventually appeared in the Code of 1957 as Article 47.

Significantly, Chapter 349 of the Laws of 1896 made a preferential transfer by an insolvent corporation voidable "just as if the same had been made by a natural person who had become an insolvent under Article 47 of the Code of Public Laws ...." This law was later codified as Art. 23, § 264A. Thus, in 1896 Maryland had established full insolvency proceedings, which included provisions for the avoidance of transfers before the commencement of a liquidation proceeding and provided for the discharge of debtors.

In 1898, Congress enacted the National Bankruptcy Act, which superseded most parts of Maryland insolvency law, except that the Act still allowed proceedings under state laws regulating assignments for the benefit of creditors.

In 1951, the legislature repealed and reenacted Article 23, the corporation law. New § 77(b) provided:

All preferences, payments and transfers made by the corporation, which would be void or fraudulent under the provisions of the insolvency laws of this State if made by a natural person or under the acts of the Congress of the United States relating to bankruptcy, shall to like extent be fraudulent and void.

Significantly, the 1951 enactment was the first time Maryland insolvency laws forbidding preferential transfers made reference to federal bankruptcy law. Furthermore, by this enactment the receiver had two methods to void or set aside a preference, either under state or federal law. Section 77(b) was recodified as Article 23, § 81(b) of the 1957 Code and is the immediate precursor to §§ 15–101(b) and (c).

Sections 15–101(b) and (c) were enacted in 1975 as a result of the report of Governor Mandel's Commission to revise the Annotated Code. The Commission, following guidelines established in 1970, made its report in January, 1975 which report, among other things, recommended a new article relating to commercial and related transactions. During this same period when the Governor's Commission was functioning, Congress also had a Commission studying the

revision of the federal bankruptcy laws. The new Bankruptcy Act was enacted in 1978 to take effect in October, 1979, and it eliminated the requirement that the creditor have reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer.

With this background, we turn to the contentions of the parties. First of all, the legislative history of § 15–101 would appear to support Smith's contention that the General Assembly intended to confer the same alternate powers on an assignee to set aside preferences as had been provided in former § 81(b). In addition we detect no intention by the General Assembly to limit § 15–101(b) by the language in § 15–101(c). To the contrary, it seems clear to us that the legislature, in enacting §§ 15–101(b) and 15–101(c), merely divided the alternative functions of § 81(b) by allowing an assignee to proceed to set aside a preferential transfer which violated the federal bankruptcy laws under § 15–101(b) and allowing the assignee to proceed to set aside a preference which violated our state insolvency laws under § 15–101(c). The legislature was also careful enough in 1975 to include as part of the procedure for setting aside a preference under state law what was then the accepted federal standard of reasonable cause. Furthermore, we believe the General Assembly was fully aware that Congress was studying bankruptcy procedure and that Congress would make changes in the 1898 law as amended. We think the General Assembly sought to anticipate such changes by substituting for the words *"the* acts of Congress" in Art. 23, § 81(b) the words *"any* acts of Congress" in § 15–101(b).

Plymouth argues that to adopt this interpretation does violence to the accepted function of a reference statute. Plymouth maintains that § 15–101(b) is a reference statute which adopts only the federal law as enacted in 1975 and no subsequent amendments. We disagree.

The authorities uniformly agree that a statute may adopt all or part of another statute by descriptive reference

thereto, and when this occurs it is as if the part adopted has been written into the adopting statute. It is also generally agreed that where the legislative intent is clear, the adopting statute will include subsequent modifications or amendments to the adopted statute. The proposition was clearly stated by the late Judge Moore for the Court of Special Appeals in *Hanrahan v. Alterman*, 41 Md.App. 71, 396 A.2d 272 (1979), *cert. denied*, 284 Md. 744 (1979):

> The law recognizes 'a special class of related statutes, ... the relationship [between which] results from the fact that one statute adopts the terms of the other without restating them. Incorporating statutory provisions by reference, partially or entirely, into legislation has been long recognized as an acceptable practice on both the state and federal levels unless prohibited by constitutional provisions. 'The purpose of incorporating [adopting,] or referring to prior statutes is to avoid encumbering the statute books with useless repetition and unnecessary verbiage.' When passed, the incorporated act becomes a part of the incorporating legislation; it is as if the incorporated act was specifically written into the law.
>
> Reference statutes may be either *specific*—reference by title or section number—or *general*—reference to the general law on the subject. Unless altered by statute, as in Maryland, the substantial differences between these two types of related statutes is that a *general reference statute incorporates in its coverage all subsequent amendments and modifications to the incorporated act* while specific reference statutes do not. It is settled that although general reference statutes are permissible, the language of incorporation must be specific enough to inform the citizenry of the applicability of the incorporated provisions.

*Id.* at 81–82, 396 A.2d at 278–79 (emphasis supplied, footnotes omitted).

Smith is also correct in suggesting that 1A *Sutherland Statutory Construction* (4th ed. 1985) supports this point of view. In the "Legal Commentary" section of Sutherland's work, it is stated that:

the earlier decisions in both England and the United States hold without qualification that the repeal of the incorporated law leaves the referring one in force, unless it also is repealed expressly or by necessary implication, and that the reference does not carry with it changes afterwards made in the former. Taking as premise the primary effect of a reference, the logic of such a rule is obviously unassailable . . . .

But, despite their initial declaration of firm loyalty to a rule coined of logic and dedicated to certainty, it was not long before the 'American' courts, while in the throes of construction, resorted to the 'Intention of the Legislature,' that Aladdin's lamp which has so often enabled Anglo-American courts to conjure much from little or nothing. The result was a distinction between two types of reference: Where one statute adopts the whole or a part of another statute by a particular or descriptive reference to the statute or provisions adopted, such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions, modifications, or repeals of the statute so taken unless it does so expressly or by necessary implication. But where the reference, is not to any particular statute or part of a statute, but to the law generally which governs a specified subject, the reference will be regarded as including, not only the law on that subject in force at the date of the referential act, but also that law as it exists from time to time thereafter.

*Id.* at 722–23 (quoted from M. Ruud, "No Law Shall Embrace More Than One Subject," 42 Minn.L.Rev. 261 (1941)).

This Court on several occasions has recognized the principle that law may be incorporated in another statute by reference if the legislature so intended. *See e.g., Hill v. Town of Colmar Manor*, 210 Md. 46, 122 A.2d 462 (1956) (incorporation by reference of subsequent amendments was permissible); *Town of Landover Hills v. Brandt*, 199 Md. 105, 85 A.2d 449 (1952) (a general law can be adopted by reference); *Wilkinson v. McGill*, 192 Md. 387, 64 A.2d 266 (1949) (reference to general election law); *Travers v. Fogarty*, 187

Md. 348, 50 A.2d 238 (1946) (legislature incorporated city ordinance); *c.f. Supervisors of Elections v. Blunt,* 200 Md. 120, 88 A.2d 474 (1952) (incorporation by reference does not create a new substantive right).

In our view, § 15–101(b) includes by reference the 1978 laws which eliminate the "reasonable cause to believe" requirement for transfers made during the 90-day period preceding bankruptcy and creates a presumption of insolvency during that period.[1] Taking this view of the case, it becomes unnecessary for us to address the other contentions of Plymouth.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. APPELLEE TO PAY THE COSTS.

---

1. Section 15–101 was amended effective July 1, 1985 to give the assignee for the benefit of creditors and receiver in State insolvency proceedings the same powers as a federal bankruptcy trustee. The section is now codified as § 15–101(d) of the Commercial Law Article.