592 A.2d 173

**Irma REED**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 124, Sept. Term, 1990.**

Court of Appeals of Maryland.

July 17, 1991.

Motion for Reconsideration Denied Aug. 15, 1991.

Michael Marshall (Herbert R. Weiner, Schlachman, Belsky and Weiner, Pa., Baltimore), on brief, for appellant.

Kim I. Montroll, Asst. City Sol. (Neal M. Janey, City Sol., Burton H. Levin, Asst. City Sol., Baltimore), on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and MARVIN H. SMITH, Judge of the Court of Appeals (retired, Specially Assigned), JJ.

KARWACKI, Judge.

On November 24, 1989, the Commissioner of the Baltimore City Police Department terminated the employment of Irma D. Reed as a police officer, acting on the recommendation of a trial board convened in accordance with the department's administrative disciplinary process. Officer Reed appealed her dismissal to the Circuit Court for Baltimore City, claiming that the trial board based its decision on a finding of misconduct by her with which she had not been charged. When the circuit court affirmed the Commissioner's action, Officer Reed appealed to the Court of Special Appeals. We issued a writ of certiorari on our own motion prior to the case being heard by the intermediate appellate court.

The disciplinary proceedings instituted against Officer Reed grew out of an incident which occurred on July 11, 1989. At approximately 6:00 a.m. that day, several Baltimore City police officers accompanied by Corporal Steward Russell of the Maryland State Police proceeded to the home of Officer Reed in order to apprehend one Wesley Baker, for whom an arrest warrant had been issued for his violation of parole from a sentence for armed robbery. Wesley Baker was an acquaintance of Reed, although the record does not indicate how long she had known him.

Officer Reed, who was dressed in a nightgown, opened her front door in response to the officers' knock, and when she was advised of their mission, she directed them to an upstairs bedroom where Wesley Baker was sleeping. Baker was found in bed and was arrested without incident.

At the time of the arrest, the officers noticed an ashtray on a bureau located at the foot of the bed in which Baker had been sleeping. That ashtray contained the partially burned butts of two hand rolled cigarettes which the officers suspected contained marijuana. The officers also noticed a .25 caliber automatic handgun inside an open black case which was on the bureau next to the ashtray. Officer Reed's driver's license was also found on top of the bureau in close proximity to the ashtray. Reed was then placed under arrest for possession of a controlled dangerous substance (CDS), to wit, marijuana. Baker was also charged with possession of CDS and with illegal possession of a handgun.

In a written statement which Baker gave the police after his arrest, he stated that the CDS and the handgun were his and that Reed had no knowledge of either. He related that he had smoked the marijuana cigarettes the previous day while Reed was outside of the house with her children. Baker was subsequently tried and convicted in the District Court of possession of CDS and of illegal possession of a handgun. Following those convictions, the pending charge against Reed of possession of CDS was nol prossed by the State.

At 8:52 a.m. on the morning of her arrest, Reed was ordered by her commanding officer to submit to a urinalysis. She gave a urine sample which was allegedly analyzed as positive for marijuana ingestion.

On August 15, 1989, Reed was presented with the following written charges that she had violated the rules and regulations for the government of the Baltimore City Police Department:

Charge *1:* Violation of General Order *48–77,* Rule G.O. *48–77,* Section *IV(B)* Annex A

Section IV(B)

Annex A: No member of this department shall at any time indulge in the unlawful use of Controlled Dangerous Substances as defined in the CDS Act.

Specification: For that for sometime prior to, or on or about July 11, 1989, Police Officer Irma Reed indulged in the unlawful use of a Controlled Dangerous Substance, Marijuana, Schedule I.

Charge *2:* Violation of General Order *2-88*, Rule *1*, Section *Conduct*

Rule 1,

Conduct: Any breach of the peace, neglect of duty, misconduct or any conduct on the part of any member of the department, either within or without the City of Baltimore, which tends to undermine the good order, efficiency or discipline of the department, or which reflects discredit upon the department or any member thereof, or which is prejudicial to the efficiency and discipline of the department, even though these offenses may not be specifically enumerated or laid down, shall be considered conduct unbecoming a member of the Baltimore Police Department, and subject to disciplinary action by the Police Commissioner.

Specification: For that on or about July 11, 1989, in an incident reported under Central Complaint Number 8G25445, Police Officer Irma Reed reflected discredit upon the Baltimore Police Department and/or herself as a member thereof.

The trial board conducted a hearing on the charges on November 13 and 15, 1989. The department called seven witnesses to prove its charges against Officer Reed.

Two of the officers who arrested Baker and Reed on July 11, 1989, testified to their observations at Reed's home on the morning of the arrest. These two officers, however, did not enter the Reed home until the other members of the arrest team were already in the upstairs bedroom where Baker was found. There was no evidence as to what conversations Reed had with the first group of officers that entered her home. Indeed, neither of the officers who did testify was asked any questions on direct or cross-examination as to whether Reed warned him that Baker was armed. Another witness related that she conducted an analysis of

the hand rolled cigarette butts found on the bureau in the bedroom where Wesley Baker was arrested. She was of the opinion that the butts contained marijuana. The other four witnesses testified to the Reed urinalysis. The only defense witness offered expert testimony that the methods of maintaining custody of the urine specimen taken from Reed and the mechanics of the urinalysis were deficient.

At no time during opening statements or closing arguments was there any mention of Reed's failure to warn the arresting officers that Baker was armed.

After considering the evidence and the arguments of counsel, the chairman of the trial board announced its conclusions that Officer Reed was not guilty of charge 1 (marijuana usage) but was guilty of charge 2 (conduct reflecting discredit upon the department). The trial board then heard evidence in mitigation of punishment concerning the good record of Officer Reed since her appointment as a Baltimore City police officer in March of 1979.

After further deliberation, the chairman announced that the trial board had concluded to recommend that Officer Reed be terminated as a Baltimore City police officer. He left no doubt as to the principal reason for the trial board's decision:

"Mr. Weiner [Reed's counsel], sleepy or not, caught unawares or not, she allowed two members of this agency to go upstairs to serve a warrant for a violent crime violent criminal, armed robbery, you don't get much worse, did she warn those officers that there could have been a gun upstairs and can we thank God today that Paul Wingate was alive to testify and that's why she's being terminated and for no other reason."

In their written findings of fact and conclusions of law addressed to the Police Commissioner on November 20, 1989, the members of the trial board again emphasized their reliance on Reed's failure to warn the arresting officers that Wesley Baker was armed. After finding that Reed knew or should have known of the presence of marijuana in

the bedroom which they inferred she had been sharing with Baker, the trial board members wrote:

"Of greater concern to this Board is the fact that there was an armed convicted felon (armed-robbery) parole violator in her bedroom. Unchallenged testimony was that she told the arrest team where the subject was located and invited the team to respond to the bedroom to apprehend him. This Board believes that, for the reasons cited above as regards the marijuana in the bedroom, that Irma Reed, as a Police Officer, knew or had reason to know that Wesley Baker was armed and did not warn the arrest team. The possible consequences of such behavior are absolutely horrific."

Reed contends that she was given no notice by the department of any alleged misconduct on her part on July 11, 1989, related to a failure to warn the officers who appeared at her home to arrest Wesley Baker that Baker was armed. She emphasizes that the first mention of any such conduct during the proceedings occurred when the chairman of the trial board announced its decision on the charges against her. Consequently, she asserts that her dismissal, based upon the trial board's conclusion that she did fail to so warn, violated her rights under the Fourteenth Amendment of the U.S. Constitution and the Law Enforcement Officers' Bill of Rights (LEOBR), Maryland Code (1957, 1987 Repl.Vol.) Article 27, § 727–734D.[1] In our view the LEOBR is dispositive.

■ It is undisputed that Reed was a law enforcement officer entitled to the protections of the LEOBR when she was notified of the departmental charges made against her. § 727(b). The procedural safeguards afforded an officer under LEOBR during any inquiry into the officer's conduct or any departmental hearing on charges arising from that conduct which might result in disciplinary action are "the heart of the Act's protections." *DiGrazia v. County Exec.*

---

1. All further statutory references are to this Article of the Code.

*for Mont. Co.,* 288 Md. 437, 453, 418 A.2d 1191, 1200 (1980). Section 730(a) guarantees the officer notice of any hearing on charges which could result in a disciplinary sanction and requires that "[t]he notice shall state the time and place of the hearing and *the issues* involved. (Emphasis supplied). *Mayor of Ocean City v. Johnson,* 57 Md.App. 502, 516, 470 A.2d 1308, 1315 (1984). The requirement that an officer who is facing a disciplinary hearing which might result in some punitive action be given notice of "the issues involved" is but one of several procedural safeguards which the Legislature has mandated to insure that an officer facing disciplinary action is afforded a fair hearing of the charges. The right to present evidence and argument of the issues involved and to be represented by counsel is guaranteed by § 730(c). The right to cross-examine witnesses and submit rebuttal evidence is specified in § 730(e). Witnesses are required to testify under oath by § 730(g). The officer's right to compel attendance of witnesses by summons is insured by § 730(i).

In the instant case Reed was notified of two charges which would be presented to the trial board. The first, accusing her of marijuana usage, was straightforward. The second was much less so:

> For that on or about July 11, 1989, in an incident reported under Central Complaint Number 8G25445, Police Officer Irma Reed reflected discredit upon the Baltimore Police Department and/or herself as a member thereof.

The incident reported under Central Complaint Number 8G25445 was incorporated by reference in the second charge. That report documented the arrests of Wesley Baker and Officer Reed on July 11, 1989 for a "CDS Violation." The narrative portion of the report stated in pertinent part:

> "On the 11 July 89, members of the fugitive unit, Md. State Police and uniform officers from the Southwestern Dist. responded to 774 Grantley St. armed with a warrant issued for Wesley Baker for viol. of parole for armed robbery, warrant # 147880 retake.

The detectives knocked on the front door for about 10 minutes when a female ID as Irma Diane Reed, # 30-2 open the door. She was advised of the open parole warrant for Wesley Baker, and that we had information that he was on the premises. She let the police go up stairs to the second floor front bedroom, where Wesley Baker was arrested in bed without resistance.

Trooper Steward Russell, Md. State Police was standing in front of the bed, he turned around and observed a black case, open with a .25 cal. Titan auto. inside same. Same recovered and found to contain (3) live .25 cal. cartridges.

Officer James Lampson, S.W.Dist. uniform put out a cigarette in the ash tray next to where the black case was sitting and observed two partially smoked hand rolled cigarettes, contain what looked like marijuana. At this point M's Reed, who is a police officer, was placed under arrest."

There is no mention in the report of any failure by Reed to warn the arresting officers that Baker was armed.

■ The requirement of § 730(a) that the notice of the disciplinary hearing advise the officer of the "issues involved" is a recognition by the General Assembly of the Fourteenth Amendment guarantee of procedural due process when a protected property interest in continued public employment is threatened by disciplinary proceedings. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–04 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556–57 (1972). *See also Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (purpose of notice is to apprise the affected individual of, and to permit adequate preparation for, an impending hearing.); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections.); *Arnett v. Kennedy*, 416 U.S. 134, 170–71, 195–96, 94 S.Ct. 1633, 1652–53, 1664–65, 40 L.Ed.2d 15, 42–43, 56–57 (1974); *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725, 738–39 (1975). The obvious purpose of the notice requirement in § 730(a) is to apprise the officer of the charges warranting disciplinary action in sufficient detail to enable the officer to marshal evidence and arguments in defense of the assertions. We hold that the notice provided Officer Reed did not adequately advise her that the issue of whether "she reflected discredit upon the Baltimore Police Department and/or herself as a member thereof" would depend upon her failure to warn the officers who intended to arrest Wesley Baker that Baker was armed. Since the record reflects that her dismissal as a Baltimore City police officer was substantially based upon that conduct, the department's failure to notify her that her failure to warn would be an issue at the hearing on the charges against her violated the LEOBR. For that reason, the decision of the Police Commissioner based upon the recommendation of the trial board must be reversed.

JUDGMENT REVERSED;

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY.